# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AB VALUE PARTNERS, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 10434-VCP |
| | ) | |
| KREISLER MANUFACTURING | ) | |
| CORPORATION, a Delaware | ) | |
| corporation, EDWARD A. STERN, | ) | |
| JOHN W. POLING, SR., and MICHAEL | ) | |
| D. STERN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted:  December 12, 2014
Date Decided:  December 16, 2014

Marcus E. Montego, Esq., John G. Day, Esq., PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; *Attorneys for Plaintiff.*

Larry R. Wood, Jr., Esq., Elizabeth A. Sloan, Esq., BLANK ROME LLP, Wilmington, Delaware; *Attorneys for Defendants.*

**PARSONS, Vice Chancellor.**

Plaintiff, AB Value Partners LP ("AB Value"), requests that this Court issue a temporary restraining order ("TRO") enjoining the advance notice bylaw of Defendant Kreisler Manufacturing Corporation ("Kreisler" or the "Company") so that AB Value can run a competing slate of directors at Kreisler's annual stockholder meeting on December 18, 2014. For the reasons that follow, I deny Plaintiff's motion for a TRO.

## I.     BACKGROUND

### A.     The Parties and Other Relevant Actors

AB Value is an activist hedge fund that, together with its affiliates, owns a roughly 11.1% stake in Kreisler.[1] AB Value seeks to run a dissident slate of directors at Kreisler's 2014 annual meeting.

Defendant Kreisler is a Delaware corporation whose shares trade on OTC Pink Sheets. It is a relatively small manufacturing company in the aeronautics industry. The Company's board of directors (the "Board") consists of four members, two of whom are independent directors. Three members of the Board are named as defendants.

Defendants Michael D. Stern and Edward A. Stern are brothers and run the Company together. They each hold the role of Co-President. Edward Stern is also the Chief Corporate Officer and the Corporate Secretary. Michael Stern is the Chief

---

[1]     Percentages of share ownership are derived from Kreisler's Notice of Annual Meeting of Stockholders, which was attached as Exhibit A to Plaintiff's Complaint (hereinafter "2014 Meeting Notice"). The chart of major stockholders in that document lists AB Value Management LLC as owning 11.1% of Kreisler's shares and affiliate AB Opportunity Fund LLC as holding 8.5%. As clarified in a footnote, the latter's shares are included in the 11.1% total of the former's holdings.

Executive Officer and the Treasurer. Both are directors of the Company. Each owns 12.2% of the Company's stock.[2] For convenience, I will refer to them in their collective corporate roles as the "Stern Management." Part of this dispute revolves around a proposal by the Stern Management to substantially increase their pay.

Defendant John W. Poling is an independent director on the Kreisler Board. He owns less than one percent of Kreisler's stock.[3]

Joseph P. Daly also is an independent director on the Kreisler Board. At 19.3%, he is Kreisler's largest stockholder.[4] Daly is the only director not named as a defendant.

### B. Factual Overview and Procedural History

AB Value seeks to nominate its own slate of directors for election at Kreisler's annual stockholder meeting, scheduled to be held on December 18, two days from now. Kreisler's bylaws contain an advance notice bylaw (the "ANB") that reads, in relevant part:

> No business may be transacted at an annual meeting of stockholders other than business that is . . . otherwise properly brought before the annual meeting by any stockholder of the corporation (i) who is a stockholder of record on the date of the giving of the notice provided for in this Section 12 and on the record date for the determination of stockholders entitled to vote at such annual meeting and (ii) who complies with the notice procedures set forth in this Section 12.

---

[2] *Id.* at 9, 14.

[3] *Id.* at 14.

[4] *Id.*

2

> In addition to any other applicable requirements . . . such stockholder must have given timely notice [of an intent to run a slate of candidates for directors] in proper written form to the Secretary of the corporation. To be timely, a stockholder's notice to the Secretary must be delivered to or mailed and received at the principal executive offices of the corporation not less than sixty (60) days nor more than ninety (90) days prior to the anniversary date of the immediately preceding annual meeting of stockholder.[5]

The anniversary date of the 2013 annual meeting is December 17, 2014.[6] Thus, pursuant to the terms of the ANB, Plaintiff needed to submit its nominees no earlier than September 18, 2014, and no later than October 18. It is undisputed that AB Value did not submit its nominees in accordance with the ANB.

If the ANB is not enjoined, Plaintiff will not be able to attempt to elect its nominees at this year's stockholder meeting. Accordingly, AB Value asks this Court to expedite this matter and grant a TRO enjoining Kreisler from enforcing the advance notice requirement at the upcoming annual stockholder meeting.

AB Value filed its Complaint and accompanying motions for expedited consideration and a TRO on December 5, 2014. Plaintiff primarily contends that material events that occurred after the October 18, 2014 advance notice compliance deadline render enforcement of the ANB inequitable. Primarily, AB Value points to: (1) the distribution of a 37.2% voting bloc, previously held in trust, to the four trust

---

[5] Compl. Ex. C (Kreisler's Amended and Restated Bylaws) Art. I [sic: II], § 12.

[6] Compl. Ex. B (Kreisler's Notice of Annual Meeting of Stockholders to Be Held on December 17, 2013) [hereinafter "2013 Meeting Notice"].

3

beneficiaries; (2) recently approved salary increases for the Stern Management; and (3) errors in the Company's 2014 Meeting Notice. These issues are discussed further in Section IV *infra*. Defendants filed responsive documents on December 9. They argue that Plaintiff's contentions are without merit and fall short of meeting the standard required for this Court to enjoin Kreisler's bylaw. AB Value submitted a reply on December 11 and the parties presented oral argument on the motion for a TRO on December 12 (the "Argument"). This Memorandum Opinion constitutes my ruling on Plaintiff's motion for a TRO. Based on the rapid briefing and my disposition of the request for a TRO, AB Value's motion to expedite is moot.

## II.    STANDARD OF REVIEW

A TRO is a special remedy of short duration designed primarily to prevent imminent irreparable injury pending a preliminary injunction or final resolution of a matter.[7] "To obtain such an order, a party must demonstrate three things: '(i) the existence of a colorable claim, (ii) the [existence of] irreparable harm . . . if relief is not granted, and (iii) a balancing of hardships favoring the moving party.'"[8] Where the TRO "grants the plaintiff all relief to which it might be entitled after a full trial on the merits,"[9]

---

[7]    *Arkema Inc. v. Dow Chem. Co.*, 2010 WL 2334386, at *3 (Del. Ch. May 25, 2010) (quoting *CBOT Hldgs., Inc. v. Chicago Bd. Options Exch., Inc.*, 2007 WL 2296356, at *3 (Del. Ch. Aug. 3, 2007)).

[8]    *Id.* (quoting *CBOT Hldgs., Inc.*, 2007 WL 2296356, at *3); *see also Newman v. Warren*, 684 A.2d 1239, 1244 (Del. Ch. 1996).

[9]    *Arkema Inc.*, 2010 WL 2334386, at *3.

4

the plaintiff must clearly establish the legal right she seeks to protect or enforce and show that the material facts are not in substantial dispute.[10]

The essential facts of this case are not in dispute and any facts that may be disputed are immaterial to resolution of this motion. Procedurally, however, it is important that, were I to issue a TRO, AB Value probably would be able to run its dissident slate of directors and thereby receive virtually all the relief it seeks. Thus, Plaintiff effectively seeks a mandatory injunction requiring the Board to waive Kreisler's ANB. In addition, due to the tight timeframe involved and the fact that the Court was able to hear arguments and consider limited evidence from both sides to this dispute, the TRO motion before me is more in the nature of a preliminary injunction, albeit on a highly truncated record. In these circumstances, AB Value must do more than show the existence of a colorable claim, which is the element substantially disputed by the parties and the focus of this Memorandum Opinion. That is, the showing AB Value must make on the merits of its motion arguably could be either a reasonable probability of success on the merits, based on its being tantamount to a preliminary injunction,[11] or an entitlement to judgment as a matter of law on the merits in view of the mandatory nature of the relief

---

[10] *Id*. (citing *Stahl v. Apple Bancorp, Inc.*, 579 A.2d 1115, 1120 (Del. Ch. May 17, 1990)).

[11] *Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2008 WL 902406, at *3 (Del. Ch. Apr. 3, 2008); *Nutzz.com, LLC v. Vertrue Inc.*, 2005 WL 1653974, at *6 (Del. Ch. July 6, 2005).

it seeks.[12] But, I need not decide precisely what standard applies here, because, as explained below, AB Value has failed to satisfy even the most lenient standard—*i.e.*, the existence of a colorable claim.

## III. DELAWARE JURISPRUDENCE ON ADVANCE NOTICE BYLAWS

This Court previously has noted that: "Advance notice requirements are 'commonplace' and 'are often construed and frequently upheld by Delaware courts.'"[13] Such bylaws are said to be "useful in permitting orderly shareholder meetings, but if notice requirements 'unduly restrict the stockholder franchise or are applied inequitably, they will be struck down.'"[14]

At their core, those cases enjoining advance notice bylaws are context-specific applications of the Delaware Supreme Court's opinion in *Schnell v. Chris-Craft Industries, Inc.* and its oft-quoted statement that "inequitable action does not become permissible simply because it is legally possible."[15] The clearest set of cases providing support for enjoining an advance notice bylaw involves a scenario where a board, aware

---

[12] *Alpha Builders, Inc. v. Sullivan*, 2004 WL 2694917, at *3 (Del. Ch. Nov. 5, 2004) ("This Court has utilized the higher mandatory injunction standard where, instead of seeking 'to preserve the status quo as interim relief, Petitioners, as a practical matter, seek the very relief that they would hope to receive in a final decision on the merits.'") (quoting *Joyland Daycare Ctr. v. Dep't of Servs. for Children, Youth, & Their Families*, 1996 WL 74713, at *2 (Del. Ch. Jan. 22, 1996)).

[13] *Goggin v. Vermillion, Inc.*, 2011 WL 2347704, at *4 (Del. Ch. June 3, 2011) (quoting *Openwave Sys. Inc. v. Harbinger Capital P'rs Master Fund I, Ltd.*, 924 A.2d 228, 238-39 (Del. Ch. 2007)).

[14] *Id.* (quoting *Openwave Sys.*, 924 A.2d at 239).

[15] 285 A.2d 437, 439 (Del. 1971).

6

of an imminent proxy contest, imposes or applies an advance notice bylaw so as to make compliance impossible or extremely difficult, thereby thwarting the challenger entirely.[16] That is not the situation here. The record indicates that Kreisler adopted the ANB on a "clear day" long before the present proxy challenge was contemplated by AB Value.[17] There also is no challenge to the validity of the ANB on its face; rather, AB Value attacks its validity as applied in the circumstances of this case.

Another set of cases concerns advance notice bylaws that are ambiguous.[18] This case also does not involve that issue. None of the parties contend that the ANB is

---

[16]  *See Mesa Petroleum Co. v. Unocal Corp.*, 1985 WL 44692, at *5 (Del. Ch. Apr. 22, 1985) (finding inequitable 30-days' notice bylaw interpreted by corporation effectively to require 90-days' notice under the circumstances in question, a requirement with which dissident stockholder could not possibly comply); *Lerman v. Diagnostic Data, Inc.*, 421 A.2d 906, 911 (Del. Ch. 1980) (holding that a 70-days' notice bylaw was inequitable in a situation where the board announced the annual meeting only 63 days before it was to occur, rendering compliance impossible); *see also Linton v. Everett*, 1997 WL 441189, at *9-10 (Del. Ch. July 31, 1997) (citing *Lerman* and setting aside an election of directors in situation where annual meeting had not been called for several years and the board announced a meeting on 30-days' notice, thus triggering a ten-day window in which plaintiffs could propose alternative directors).

[17]  According to an affidavit of Edward Stern (the "Stern Aff."), the ANB was adopted December 11, 2007 and filed as part of the Company's December 17, 2007 Form 8-K. Stern Aff. ¶ 2.

[18]  *See Levitt Corp. v. Office Depot, Inc.*, 2008 WL 1724244, at *6-7 (Del. Ch. Apr. 14, 2008) (determining that a bylaw requiring advance notice of the "business" to be addressed at the annual meeting did not preclude a proxy contest because the company's proxy statement satisfied the bylaw's requirement); *JANA Master Fund, Ltd. v. CNET Networks, Inc.*, 954 A.2d 335, 342-46 (Del. Ch. 2008) (concluding that bylaw establishing stockholder minimum holding requirements for nominating directors was not an advance notice bylaw but instead concerned

7

unclear, that it does not apply to Plaintiff, or that AB Value complied with the ANB. Instead, this case involves a situation in which Plaintiff was aware of the ANB and admittedly has not complied with it, but nevertheless seeks to have this Court enjoin enforcement of the ANB days before the annual meeting.

AB Value relies heavily on *Hubbard v. Hollywood Park Realty Enterprises, Inc.*[19] In that case, Hubbard, an insurgent stockholder, filed suit to enjoin an advance notice bylaw, but ended up complying with the bylaw's requirements anyway. The board and Hubbard reached a settlement agreement whereby the board added a directorship spot and filled it with Hubbard. In an unexpected turn of events, once Hubbard joined the board, he apparently won the others over and the new "management" director slate included both Hubbard and a majority of directors allied with him and supportive of his plan to alter substantially the direction of the company's business. The other board members— all of whom were the original targets of, and defendants in, Hubbard's lawsuit—now sought to run their own competing slate of directors. After the board declined to waive the advance notice bylaw, the now-minority directors brought cross-claims to enjoin its enforcement. On this unusual set of facts, the Court examined whether continued enforcement of the advance notice bylaw was equitable.

---

stockholder access to management's proxy under Rule 14a-8 promulgated under Section 14 of the 1934 Exchange Act).

[19] 1991 WL 3151 (Del. Ch. Jan. 14, 1991).

Looking to cases such as *Schnell* and *Blasius*,[20] the Court in *Hubbard* stated the question as follows: "[A]lthough the by-law notice requirement is facially valid and was equitable at the time it originally became applicable, was the [company's] directors' subsequent refusal to waive the by-law requirement inequitable?"[21]  Answering in the affirmative, the Court observed that:

> This is not a case where the shareholders, unprovoked by any board action, unilaterally and belatedly changed their minds and decided to nominate a slate of candidates for director.  In such a situation, relief should clearly be denied.  Rather this is a case where *the [company] board itself took certain action*, after the by-law nomination deadline had passed, that involved an unanticipated change of allegiance of a majority of its members . . . .  Such material, post-deadline changes would also foreseeably generate controversy and shareholder opposition.   Under those circumstances, consideration of fairness and the fundamental importance of the shareholder franchise dictated that the shareholders be afforded a fair opportunity to nominate an opposing slate, thus imposing upon the board the duty to waive the advance notice requirement of the by-law.[22]

The Court in *Hubbard*, therefore, focused its analysis on three elements.  First, did the change in circumstances occur after the advance notice deadline?  Second, was the change "unanticipated" and "material"?  Third, was the change caused by the board of directors?

---

[20]     *Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651 (1988).

[21]     *Hubbard*, 1991 WL 3151, at *10.

[22]     *Id.* at *12 (emphasis added).

AB Value, as shown below, attempts to read *Hubbard* too broadly without focusing on these questions and without considering subsequent Delaware jurisprudence that makes clear that compelling circumstances must exist before the equitable powers invoked in *Hubbard* (based on *Schnell*) will be applied.[23] I read *Hubbard* as requiring a material change in circumstances, which the case alternatively describes as a "radical shift in position,"[24] caused by the directors,[25] that occurs after the advance notice deadline. In that regard, I note that Plaintiff also relies on *Icahn Partners LP v. Amylin Pharmaceuticals, Inc.*[26] There, the Court granted a motion to expedite in a case in which the plaintiffs sought to enjoin an advance notice bylaw on grounds that the board inexplicably refused to engage with a potential acquirer offering a substantial premium.

---

[23]   Not long after the *Hubbard* decision, for example, the Delaware Supreme Court commented in passing that although *Schnell* "is an important part of our jurisprudence, its application, or that of similar concepts, should be reserved for those instances that threaten the fabric of the law, or which by an improper manipulation of the law, would deprive a person of a clear right." *Alabama By-Products Corp. v. Neal*, 588 A.2d 255, 258 n.1 (Del. 1991). In a case canvassing the existing law on advance notice bylaws, this Court stated that "[the Court of Chancery's] equitable powers can only be roused under *Schnell* where compelling circumstances suggest that the company unfairly manipulated the voting process in such a serious way as to constitute an evident or grave incursion into the fabric of the corporate law." *Accipiter Life Scis. Fund, L.P. v. Helfer*, 905 A.2d 115, 127 (Del. Ch. 2006).

[24]   *Hubbard*, 1991 WL 3151, at *10.

[25]   Plaintiff seems to suggest that some set of circumstances could arise in which a dramatic change occurs without any action (or accompanying inaction) by the directors that would make it inequitable, under the circumstances, to enforce an advance notice bylaw. Even assuming that may be true, such a set of circumstances is not present in this case.

[26]   2012 WL 1526814 (Del. Ch. Apr. 20, 2012).

10

Citing *Hubbard*, the Court found that the plaintiffs had articulated a sufficiently colorable claim in part because they adequately alleged that "the Board radically changed its outlook for the Company."[27] Based on that premise and the sacrosanct nature of stockholder voting rights, the Court also found a sufficient possibility of threatened irreparable harm because, if the plaintiffs were right, the company's stockholders could "be denied the opportunity to exercise their voting rights at an arguably critical time."[28]

## IV. APPLICATION OF THE LAW TO THE FACTS

The foregoing review of the case law convinces me of the following. First, *Hubbard* is a context-specific application of *Schnell*—a doctrine not lightly invoked—and Plaintiff must provide compelling facts indicating that enforcement of the ANB is inequitable. And second, to make that showing, AB Value must proffer evidence demonstrating that, because of action or inaction by Kreisler's Board that occurred after the ANB's October 18, 2014 deadline, circumstances at the Company had materially or radically changed such that equitable relief would be needed to afford the stockholders a fair opportunity to nominate an opposing slate.[29] The standard is high and AB Value has not made the required showing.

---

[27]     *Id.* at * 3.

[28]     *Id.*

[29]     *Hubbard*, 1991 WL 3151, at *12.

11

## A. The Allegedly Material New Information

The relevant period of inquiry is from October 18, 2014, until Plaintiff filed its Complaint on December 5. AB Value argues that at least three relevant material events have occurred. I note as well two other items of potential interest.

### 1. The distribution of shares from a trust

Until recently, 37.2% of Kreisler's shares were voted as a bloc while held in a trust. The beneficiaries of that trust were the Stern Management and two other Stern siblings. Plaintiff alleges that it became aware of this information on either November 24 or 26, when the 2014 Meeting Notice was posted.[30] Evidence in the record suggests that the shares were distributed from the trust on November 6, 2014, which is still after the October 18 advance notice deadline.[31] According to Plaintiff, this information is material because it "alters the prospect of success for a competing slate of directors substantially."[32] Defendants disagree, alleging that historically the trust voted in accordance with the unanimous wishes of the four beneficiaries.[33] Indeed, the Stern Management received half of the shares held in the trust. Plaintiff, however, filed a

---

[30] In the Complaint, Plaintiff uses the date of November 24. The 2014 Meeting Notice, however, bears the date of November 26. I find this discrepancy immaterial.

[31] Stern Aff. ¶ 7.

[32] Compl. ¶ 20.

[33] Stern Aff. ¶ 8.

recently returned proxy card of Jeffrey R. Stern, another of the trust beneficiaries, indicating that he intends to vote with AB Value.

Nevertheless, even assuming that Plaintiff is correct, I am not convinced that a development such as this, which may alter the likelihood of success of a proxy campaign, is a relevant consideration. The Kreisler Board had nothing to do with the effective dissolution of the trust. Stockholder composition changes frequently in companies. Here, at most, 18.6% (the trust-related holdings of two of the four beneficiaries) is now in play, when previously it was not. While AB Value may view this turn of events as a radical shift in terms of its own prospects in a proxy contest, the Court's focus is on the board and material actions taken by the board that substantially alter the direction of the company. I fail to see how the change in stockholder composition at issue here, with which the Board had no involvement, gives rise to a duty by the Board to waive an advance notice bylaw.

### 2. The dispute over management compensation

Plaintiff also recently discovered that the Stern Management intended to give themselves substantial pay raises. The exact date AB Value acquired this information is unknown, but it is alleged to have been after October 18. Michael and Edward Stern each were being compensated at the rate of $175,000 per year. On December 5, 2014, the Kreisler Board approved a pay raise to $275,000 for each of them. Plaintiff characterizes this increase as part of the Stern Management's "self-interested design to grossly

overcompensate themselves."[34]  For added support, AB Value points to a December 5 public letter by independent director Daly calling for a compensation committee consisting entirely of independent directors.[35]  Defendants defend the pay raise as warranted by significant improvements in the Company's finances.

These facts and allegations indicate that some dissension existed on the Board regarding executive compensation issues.  The 2014 Meeting Notice distributed to stockholders also now appears to be inaccurate, because it lists the Stern Management's compensation at $175,000 each.[36]  This case, however, is not about misleading proxy disclosures.  The Complaint does not allege any disclosure violations.  Instead, AB Value seeks declaratory and injunctive relief to enable it to run a dissident slate of directors.  The problem for Plaintiff is that the pay bump they criticize does not appear to constitute a radical shift in corporate direction.  Indeed, despite Plaintiff's heavy emphasis on Daly's public letter, Daly actually voted for the pay increase, as did Poling, the other independent director.[37]  Thus, the Board unanimously approved the resolution increasing the annual compensation of Stern Management.  Furthermore, neither the operations of the Company nor its business direction have changed.

---

[34]     Compl. ¶ 22.

[35]     A copy of this letter was attached as Exhibit D to the Complaint.

[36]     2014 Meeting Notice 9.

[37]     Pl.'s Reply Ex. B [hereinafter "Daly Aff."] ¶ 8; Stern Aff. ¶ 10.

In comparison to the recent pay increase, AB Value appears more concerned about another topic the Kreisler Board recently discussed. That is the possibility, or even probability, that the Stern Management will request, sometime in the future, a further payout based on a theory that Michael and Edward Stern were underpaid in the past and that those underpayments constituted loans by them to the Company that Kreisler now should repay.[38] According to the evidence submitted by Plaintiff, however, the request for such loan repayment compensation appears to have been tabled.[39] What may happen after Kreisler's annual meeting and the election of the Board is merely speculation at this point. This Court cannot grant the extraordinary relief of enjoining a Company's facially valid advance notice bylaw on the basis of hypothetical future events.[40] If this issue of compensation for past contributions does resurface and AB Value feels aggrieved, it can pursue its available remedies at that time.

### 3. The error in Poling's biography

In the 2014 Meeting Notice, Kreisler incorrectly stated that Poling also is a director of US Ecology, Inc., which Plaintiff describes as a successful waste management company twenty times larger than Kreisler. In fact, Poling had left that board over a year

---

[38] Daly Aff. ¶¶ 3-7; Arg. Tr. 20-21.

[39] Daly Aff. ¶¶ 8-9.

[40] *Openwave Sys.*, 924 A.2d at 240 ("Because Delaware law does not permit challenges to bylaws based on hypothetical abuses, the court will not consider those scenarios.").

15

before Kreisler issued the 2014 Meeting Notice.[41] In addition, AB Value emphasizes that Poling was involved with a company called The TUBE Media Corporation, whose CEO was sentenced this year to nine years in prison. While Plaintiff insinuates that Poling was involved with those crimes, there is no evidence to that effect in the record.[42] Furthermore, even under AB Value's broad reading of *Hubbard*, the relevance of this information is questionable because it came to light *before* October 18, 2014, and it falls well short of *Hubbard*'s material or radical change standard.

### 4. The purportedly suspicious press release

AB Value further accuses Kreisler of selectively releasing information based on a December 3, 2014 press release. This press release "touts the potential of a long-term agreement with a major customer,"[43] and it is apparently the first press release by Kreisler of the whole year. AB Value derides this positive press release as nothing but cover to hide Defendants' entrenchment efforts. In support of its position, Plaintiff notes that the last similar promotional press release occurred in September 30, 2010, when the Company touted a long-term agreement relating to a factory in Poland. That Polish venture resulted in a huge loss for Kreisler. AB Value wisely seems to have abandoned this highly speculative argument. In any event, it provides no basis on its own or in combination with Plaintiff's other complaints for enjoining the ANB.

---

[41] Compl. ¶ 24.

[42] *See* Stern Aff. ¶ 9 (stating that Poling was never charged by any governmental entity in connection with his relationship with The TUBE Media Corporation).

[43] Compl. ¶ 7.

### 5. Kreisler's amended bylaws

Despite the potential importance of this litigation in a possible battle for control of the Company, Kreisler's Board recently fanned the flames of AB Value's suspicions of an entrenchment motive by amending the Company's bylaws to add two new defensive provisions. On December 8, Kreisler added: (1) a new director-qualification requirement that effectively gives agencies of the federal government and significant customers of the Company the ability to block a nominee; and (2) a new bylaw that "protects" stockholders from "coercive, discriminatory and other unfair tender offers."[44] I note, however, that the director qualification bylaw does not apply to this election and that there is no evidence in the record of any current or contemplated tender offer. Thus, while Kreisler's timing may raise questions, these new bylaws do not cure the flaws in Plaintiff's motion. Any challenge to these bylaws would not be ripe and they also do not represent a material change in the Company of the kind required to obtain relief under *Hubbard*.

### B. Plaintiff's Showing on the Merits is Insufficient

*Hubbard* involved a situation in which an insurgent joined the board, convinced a majority of his fellow directors to go along with his plan to change dramatically the direction of the company and the way it did business, and then joined that new board majority in presenting themselves to the stockholders as the management slate. Thus, the insurgent arguably acquired board control without ever having received stockholder

---

[44]     Pl.'s Reply Ex. C (Amended and Restated Bylaws) Art. III, § 1; Art. VI, § 8.

approval of his agenda. Another case relied on by AB Value is *Icahn Partners*, although that decision only involved a motion to expedite. There, the Court found it relevant that the board of directors refused to sell the company when, according to the complaint, such a sale was a "key element of the investment thesis in [the Company]."[45] Here, by contrast, there is no evidence that the Board took any action that resulted in a radical change in the Company's direction.

The most compelling aspect of Plaintiff's theory is the controversy on the Board over the Stern Management's compensation, especially as it related to previous years. Under *Hubbard*, the question is whether *the board* has shifted direction so markedly in the narrow period of time after the advance notice deadline and before the annual meeting that the stockholders should have the ability to put forward a competing slate of directors and, presumably, propose a different business direction for the corporation. The present dispute over the Stern Management's compensation and the potential for even greater disputes in the near future are not sufficiently compelling issues to warrant the unusual remedy of enjoining a company's bylaw so that a last-minute proxy contest can occur. Thus, I conclude that AB Value has not asserted even a colorable claim to invalidate the ANB, as applied. It follows, therefore, that Plaintiff also has failed to make a sufficient showing on the merits to support the preliminary mandatory injunctive relief it seeks.

---

[45] *Icahn P'rs*, 2012 WL 1526814, at *3 n.16.

Because Plaintiff has not met the colorable claim element of the TRO standard, I address only briefly the irreparable harm and balance of the harms elements. The parties devoted scant attention to these issues.

Plaintiff, relying on *Icahn Partners*, argues that it will be irreparably harmed because it will be "denied the opportunity to exercise [its] voting rights at an arguably critical time."[46] This argument is unpersuasive, because, unlike in *Icahn Partners*, AB Value did not make an adequate showing that the December 18 meeting of Kreisler is "an arguably critical time" for the Company. As to the balance of the hardships, AB Value emphasizes that it will incur significant expense in nominating a slate of directors without any certainty as to whether Kreisler's stockholders will vote on its slate, whereas Defendants will continue preparing for the meeting as they were.

Defendants claim that AB Value was not a stockholder of record when Kreisler issued the 2014 Meeting Notice, and therefore Plaintiff failed to comply with the ANB in a second way. This argument is somewhat technical in nature in that there is no dispute that AB Value was a beneficial owner of Kreisler stock at all times relevant to this action. Regardless, Defendants contend that, because AB Value was not a stockholder of record, it was not capable of making the nomination at all when Kreisler issued the 2014 Meeting Notice, so Plaintiff did not suffer irreparable harm. With respect to the balance of harms,

---

[46]     *Id.* at *3.

Defendants emphasize that Kreisler is a small business and that the diversion of management time and corporate resources to Plaintiff's challenge is substantial.

Given my determination that AB Value has failed to show a colorable claim, much less a clear legal entitlement to the relief it seeks, there is no need to resolve these issues.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order is denied. Because I deny the motion for a TRO, I also deny the related motion to expedite as moot.

**IT IS SO ORDERED.**